Rosen & Kantrow, PLLC
Avrum J. Rosen
38 New Street
Huntington, New York 11743
631 423 8527
arosen@rkdlawfirm.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
:
:
919 PROSPECT AVE  LLC            Chapter 11
                                      Case No. 16-13569-scc
:
:
-----------------------------------------------------------------x

'

**POST CONFIRMATION DEBTOR'S OBJECTION TO THE ADMINISTRATIVE
CLAIM [No. 13]  AP. TEK RESTORATIUON INC.**

To:     The Honorable Shelly C. Chapman
       United States Bankruptcy Judge:

The application ("Application") of  919 Prospect Ave. LLC, the post confirmation debtor ("Debtor") herein, by its counsel. Rosen & Kantrow, PLLC as and for its Objection to the Administrative Claim [13] of AP. TEK, INC. ("Aptek"), respectfully sets forth and represents as follows:

<u>BACKGROUND</u>

1.      Debtor filed a voluntary petition for relief from its creditors pursuant to chapter 11 of the Bankruptcy Code on December 22, 2016 (the "Petition Date").

2.      On January 26, 2017, an Order was entered by the Court directing the Office of the United States Trustee ("UST") to appoint an operating trustee of the Debtor.  Under that Order, Ian Gazes was appointed the Operating Trustee was appointed by the UST.

3.      The Amended Joint Plan of Reorganization was confirmed on October 12, 2018.

4.      The Operating Trustee had operated the Debtor's Real Property since his appointment and the operating Trustee has filed a Notice declaring the Plan effective on April 2, 2019 and turned over control of said property to the Debtor in March of 2019.

5.      An Administrative Bar Date was entered by this Court on May 2, 2019.     In response to that Bar Date Order, Aptek filed Administrative Claim N. 13 (the "Claim") in the total amount of $224,749.00.  The Debtor had numerous objections to the amounts set forth in the Claim as well as the fact that the work has never been completed as required and has attempted to resolve those issues over the last year.  Those efforts have not been successful and Aptek's counsel has requested a conference on this matter.  The Debtor is filling this formal response so that all the issues can be before the Court. Each of the Debtor's objections are set forth below.[1]

6.      Aptek has not completed all of the work required under the contract with the Ian Gazes, the Operating Trustee ("Trustee") in that there has not been any final sign off by the City of New York Department of Buildings ("DOB") on the Building permits that Aptek obtained for the work. Until DOB accepts the work, it  is not complete, as DOB can order that any or all of it be redone to meet its requirements.  Both the Debtor's contract with Aptek and the Trustee's contracts, required Aptek to obtain permits and receive approval of the work from the DOB. This obligation had to be met by Aptek and its sub-contractors on each line and on all work set forth in the permit before there could be the final payment.  This had nothing to do with HPD removing the Property from the Alternative Enforcement Program and was a separate and distinct legal obligation of Aptek.

7.      During the lengthy tenure of the project, certain requirements of DOB changed mid-project and had to be complied with by Aptek.  This was Aptek's obligation and involved opening walls and putting additional sheathing on the gas lines.  In an attempt to resolve this issue, the Debtor finally reached out to Aptek and Aptek's plumber (the sub-contractor on the job) and paid the $6.800.00 balance due from Aptek, which Aptek had not paid, and contracted with that plumber to fix the defective gas piping at a cost of $19,675.08 (Exhibit "A"). Aptek agreed to this arrangement (see Exhibit "C"). Aptek has failed to apply these amount to reduce

---

[1] At the outset, some of the documentation referred to herein is presently unavailable as the Debtor's offices are closed due to the Covid-19 restrictions and the Debtor reserves its rights to supplement this response when it has full access to its records.

its Claim.  There is no certainty that this amount will be sufficient to solve this problem, but at the very least, the Debtor is entitled to a credit for the entire amount.

8.    At a Court conference of this matter in September of 2019, the undersigned advised the Court that there was a very serious leak in the "C" line (the last line worked on by Aptek) and that raw sewage was flowing into the basement under the nail salon and seeping into the basement of the bodega next to it. Aptek denied knowledge or the existence of such a leak and the undersigned volunteered to personally attend a site visit the next week to see if the situation was as bad as it was represented to be by the Debtor.  The undersigned met the principal of Aptek there along with the building manager and the superintendent.  It was worse than we thought.  The sewage from the entire "C" line was leaking from an old main that was supposed to have been replaced by Aptek.  The access to the basement is through a trap door with a steep staircase. The basement appears to have a dirt floor.   The basement floor was full of human waste about a foot deep. Waste was seeping through the wall into the basement of the bodega next door. The undersigned took photographs which were sent to all parties.  Those photos are attached as Exhibit "B". The email setting all of this forth along with the photos is part of Exhibit "C".

9.    Aptek has acknowledged that this was its fault and has repeatedly promised it would make the repairs.  The e-mail chains on this issue are annexed hereto as Exhibit "C".  The undersigned has repeatedly insisted that Aptek must make the repairs and remediate the basements from the HazMat conditions. Despite constant and repeated demands, to date, Aptek has refused to make the repairs and to remediate the HazMat situation it created in the basements.  As noted, this work will be very difficult and expensive as there is very limited access to the nail salon and it will have to be shut down (with most furnishings removed) for the work to be performed.  The Debtor has also tried to hire Aptek's plumber directly to make the repair, but he has not responded to the requests.

10.    Aptek also never completed the work for which it was fully paid, under a contract with the Debtor for Apartments 3D, 4D, 5D, and the conversion of apartment 1B. There remains approximately $35,000.00 of work to be done.  The AIA contract is annexed hereto as Exhibit

"D". The pictures of how that apartment was left by Aptek back in October 2019 are annexed hereto as Exhibit "E".

11. After the last Court conference the parties agreed that once the leak in the basement was repaired and the work was finished in Apartment 1B, they would discuss resolution of the matter. As part of that agreement, Aptek was paid $10,000.00 on October 2, 2019 by check No. 143. Once again, Aptek has not credited that payment to its Claim. After that payment, Aptek repaired a warped floor in one of the tenant's apartments and started, but did not complete, the work in Apartment 1B. Indeed, when installing the flooring in 1B, Aptek covered up all the access openings for the radiators, causing the Debtor to have to open up the ceilings in the store below to locate them to install the radiators. The DOB inspection on the roughing in of Apartment 1B failed because of the condition it was left in by Aptek. The email to Aptek on this issue is annexed hereto as Exhibit "F". Over a year ago, the Debtor offered to let Aptek out of this contract for a credit on amounts due. Aptek refused and represented it would complete the contract as soon as it finished the "C" line. A copy of that email is annexed as Exhibit "G". As a result of Aptek's delay of over a year in competing this contract, the Debtor has lost rental income in excess of $30,000.00.

12. In addition to the defective work and the work that was not performed, Aptek has not provided adequate information to show that these funds are due. The invoices attached are directly contradictory to eleven (11) Monthly Operating Reports and the Final Post Confirmation Quarterly Report filed by the Trustee. Aptek has submitted three invoices from March **2018,** totaling $159,199.00 and another invoice in April, **2018** for $38,000.00, which together totals $197,199.00. None of the Trustee's filed reports list any overdue amount due to anyone, let alone Aptek and those reports reflect hundreds of thousands of dollars paid to Aptek during that time

period. Either, the invoices are wrong or Aptek is seeking payment on invoices that have been paid or false reports were filed.  From the scopes of work that were provided to the Debtor by the Trustee and the payments made to Aptek it appears that the total invoices  from Aptek are $1,208,600.00 and that the total that was paid by the Trustee is $1,197,050.00, so the difference is $11,550.00.  A complete reconciliation of all amounts billed, approved and paid needs to be prepared and supplied to the Court and the Debtor.

13.     There are specific issues with the invoices as well.  Invoice 2017-93 claims $19,200.00 for work done to the basement apartment. None of the work claimed was done. The apartment was left in a shambles with light bulbs hanging on wires from the ceiling, boarded up windows and the space filled with construction debris. No new sheetrock was installed nor was any closet built.  Invoice 2017-43/24 also contains work claimed to be done on the basement apartment consisting of  $19.000 for demolition and plumbing. No demolition was done, and the plumber has stated that he did no plumbing work there.  In addition, Aptek billed  for considerable lead paint removal work in the property, but has not provided the paperwork required to remove those violations on HPD records.

14.     Aptek also neglected to renew one of the permits on the job and was cited for doing work without a permit on pouring a floor in one of the commercial units (which was required to finish the store which was needed to complete a permit for the three apartments). This lapse led to a stop work order on the entire building which lasted for over six (6)months and dramatically slowed down other work on the building leading to most lost rent as tenants did not have to pay rent until they were relocated back into their apartments.

15.     There continue to be problems in the building with the work done by Aptek. Aptek installed veneer flooring in many apartments.   The court may recall that the undersigned

and the principal of the  Debtor asserted that this flooring, while easier to install, was not durable and difficult to repair. This flooring is cracking and pulling up. Apartments 5C and 1A are particularly serious and need extensive repairs.

16. The Debtor has gone to great lengths to attempt to resolve the Objections to this Claim.  The undersigned made a site visit and agreed with Aptek's principal on a course of action. The Debtor then made a good faith payment to Aptek of $10,000.00, based upon the representation that he would repair the leak in the main in the basement and complete Apartment 1B.  He reneged.  The Debtor's principal met with Aptek's principal and his plumber.  The Debtor then retained the plumber,  paid the amount that Aptek owed him and retained him to fix the deficient work.  Resolution of that issue is on hold until the work restrictions are lifted. Without going into settlement discussions, the Debtor has made a substantial offer to Aptek given the issues raised herein. Aptek sat on the offer for weeks before outright rejecting it. So, the Debtor now requests that this be deemed a contested proceeding and that the Court set a discovery schedule for an evidentiary hearing at the conference that Aptek's counsel has requested together with such other and further relief as to this Court seems just and proper.

Dated:  Huntington, New York
April 20, 2020

Rosen & Kantrow, PLLC

*Counsel for Debtor*

BY:     S/ Avrum J. Rosen
Avrum J. Rosen
38 New Street
Huntington, New York 11743
631 423 8527
arosen@rkdlawfirm.com